United States District Court

For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8              SAN JOSE DIVISION

9  Carlo De Los Reyes, et al.,                    NO. C 01-20539 JW

10            Plaintiffs,                **ORDER AMENDING JUDGMENT TO ADD**
      v.                              **ADDITIONAL JUDGMENT DEBTOR AND**
11                                         **AWARDING REASONABLE ATTORNEY**
   Olivia De Mesa Linayao, et al.,              **FEES**
12

13            Defendants.
                                        /

14                **I.  BACKGROUND**

15        On September 27, 2001, Plaintiffs Carlo De Los Reyes, Zora Noarbe, Anna Marie Ong, Grace

16 Bacero and Ira Tefora (collectively "Plaintiffs") filed this lawsuit for fraud and breach of contract in

17 connection with their employment at a skilled nursing facility in Santa Cruz, California.  The Plaintiffs

18 are Philippine nationals.  The Plaintiffs alleged that Defendants Olivia De Mesa Linayao, George

19 Santos Linayao, Pleasant Care of Northern California , Inc. ("Pleasant Care, Inc."), and Good

20 Samaritan Rehabilitation and Care Center, Inc. ("Good Samaritan, Inc."), acting through their agents,

21 committed fraud upon them in connection with their employment at a skilled nursing facility in Santa

22 Cruz called "Pleasant Care."  The alleged fraud consisted of false promises that Pleasant Care, Inc.

23 would secure social security cards and immigration documents necessary for them to work in the

24 United States.  To compound their injury, the Plaintiffs allege that the Defendants used the Plaintiffs'

25 lack of proper documentation as a reason to pay them lower wages than their skills would otherwise

26 command and forced them to do menial tasks, all in breach of their contract.  The Plaintiffs also

27 claimed that the Defendants were guilty of unlawful immigration consultation in violation of the

28 California Business and Professions Code.

United States District Court

For the Northern District of California

1    The Plaintiffs alleged that Defendant Pleasant Care, Inc. owned and operated the Santa Cruz

2    facility, and that Defendant Good Samaritan, Inc. was an affiliated company which participated in the

3    hiring fraud.

4    Throughout the litigation, all Defendants were represented by James F. Geary of Hunter,

5    Richey, DiBenedetto & Eisenbeis.  The Defendants raised a number of defenses.  While the civil case

6    was pending, a criminal case was prosecuted against Olivia Linayao based on the same conduct.  The

7    thrust of the defense by the corporate defendants was that, if Linayao had made false representations,

8    she had done so in her individual capacity and that neither of the corporate defendants were liable for

9    any misrepresentations.  The Defendants also contended that the Plaintiffs had been paid all sums

10   owing to them and that the Business and Professions Code did not apply to them.  At no time did any

11   Defendant plead--in an answer or pretrial statement--that Pleasant Care, Inc. was a suspended

12   corporation which did not operate the Santa Cruz facility.

13   The case was tried to a jury.  Each Plaintiff testified that Sedy DeMesa, the Executive Vice-

14   President of "Pleasant Care" and Olivia Linayao, the recruiter manager of Pleasant Care, had made

15   misrepresentations to each of them.

16   At the close of the evidence, the Court conducted proceedings out of the presence of the jury to

17   settle the jury instructions.  During those proceedings, there was a discussion with respect to the

18   evidence against Good Samaritan, Inc.  The evidence was that all of the misconduct was by Olivia

19   Linayao and Sedy DeMesa.  Although there was evidence that Sedy De Mesa was an official of both

20   Pleasant Care, Inc. and Good Samaritan, Inc., there was no evidence that she had taken any actions on

21   behalf of Good Samaritan.  Based on this lack of evidence, the Court questioned Plaintiffs' counsel

22   about whether he had a basis to proceed against Good Samaritan, Inc.  Attorney Geary argued that

23   nothing Ms. Linayao did was on behalf of Good Samaritan.  Accordingly, counsel for Plaintiff was

24   persuaded to voluntarily dismiss Good Samaritan, Inc. from the case:

25   The Court:      But I'm sorry, So say more. Was Sedy De Mesa at Good Samaritan when
                    petitions were received?
26   Mr. Iscandari: She's the owner of Pleasant Care and Good Samaritan.

27

28                                                    2

United States District Court

For the Northern District of California

1      The Court:    So Ms. De Mesa was the owner but was she acting on behalf of Good

2                          Samaritan in doing anything here?
    Mr. Iscandari: No, your honor.

3      Mr. Geary:    I don't believe there's any evidence of Good Samaritan being involved in
                        anything other than Ms. Linayao was an Activities Director at and I don't
                        remember anything regarding Good Samaritan whatsoever.

4      Mr. Iscandari: The Plaintiffs have agreed to dismiss Good Samaritan.
    The Court:    You're now voluntarily dismissing Good Samaritan?

5      Mr. Iscandari: Correct.

6  [Trial Tr. p. 530.]

7          On July 10, 2003, the jury rendered verdicts in favor of the Plaintiffs against Pleasant Care,

8  Inc. and Olivia Linayao.  After the Court imposed statutory penalties, judgment was entered against

9  Pleasant Care, Inc. in the total sum of $189,860 and against Olivia De Mesa in the total sum of

10  $76,718.  A defense verdict was returned in favor of George Linayao.  Judgment in his favor was

11  entered.  The Court reserved judgment on a request for attorney fees pending appeal.

12          The judgment was appealed.  However, the appeal was denied and the judgment is now final.

13          During post-judgment proceedings to attempt to collect the judgment, Plaintiff learned that

14  Pleasant Care, Inc. was a suspended corporation and had no assets.  Plaintiffs' counsel was surprised

15  by this development since Pleasant Care, Inc. had defended the action and, as a suspended

16  corporation, it would have had no capacity to appear.  Plaintiffs' counsel started an investigation.

17          Plaintiffs' counsel wrote to Attorney Geary to explain the circumstances of his appearance on

18  behalf of a suspended corporation.  Attorney Geary professed to be ignorant of the lack of capacity of

19  his client.  Eventually, Plaintiffs' counsel learned that Pleasant Care, Inc. was formed by an individual

20  named Emmanuel Bernabe.  Plaintiffs conducted a sworn examination of judgment creditor from

21  Bernabe.  In that examination, Bernabe was also represented by Attorney Geary.  Bernabe testified

22  that Pleasant Care, Inc. was defunct and that the Santa Cruz facility was operated by a similarly named

23  company that was not defunct called "Pleasant Care Corporation."

24          Since the evidence had established that Sedy De Mesa and Olivia Linayao had acted on behalf

25  of "Pleasant Care," Plaintiffs now believe that the true owner of the Santa Cruz facility was Pleasant

26  Care Corporation.  Thus, Plaintiffs move the Court to amend the judgment to add Pleasant Care

27  Corporation as a judgment debtor on the ground that it is the alter ego of Pleasant Care, Inc.  Similarly,

28

3

United States District Court

For the Northern District of California

1  Plaintiffs now believe, contrary to the representations by attorney Geary at trial, that Stockton Edison

2  Healthcare, Inc., doing business as Good Samaritan, Inc., indeed operated the Santa Cruz facility.

3  Plaintiffs move the Court to amend the judgment to add Stockton Edison Healthcare as judgment debtor

4  on the ground that it, too, is an alter ego of Pleasant Care, Inc.

5        In addition to the alter ego ground, Plaintiffs move to add these parties on the ground that

6  joinder is necessary to prevent a fraud on the Court.

7        Now that all appeals have been exhausted, Plaintiffs also move the Court to award attorney

8  fees against all Defendants, including those they seek to add to the case.

9        The motion was briefed, argued and submitted for decision.  Sydney Jay Hall and M. Alieu

10  Iscandari appeared on behalf of Plaintiffs.  James Geary appeared on behalf of Olivia Linayao and

11  Pleasant Care of Northern California, Inc. and Pleasant Care Corporation.  John M. Ottoboni also

12  appeared on behalf of Pleasant Care Corporation.  Because of its lack of capacity, the Court

13  disregards any appearance by Pleasant Care of Northern California, Inc.

**II.  DISCUSSION**

15  **A.**     **The alter ego of a judgment debtor may be added to a judgment.**

16        California Code of Civil Procedure § 187 empowers the courts of California to use "all the

17  means necessary" to carry its jurisdiction into effect.  Pursuant to the power granted by § 187, a

18  California trial court has jurisdiction to modify a judgment to add additional judgment debtors on the

19  ground that the additional party is the alter ego of the original judgment debtor.  McClellan v.

20  Northridge Park Townhome Owners Ass'n, Inc., 89 Cal. App. 4th 746, 751 (2001).  The California

21  procedure for amending a judgment to add an alter ego as a judgment debtor is a "proceeding on and in

22  aid of execution," which may be used to amend a federal judgment.  FED. R. CIV. P. 69(a).

23  **B.**     **At the time of the events giving rise to this action, Pleasant Care Corporation was the**
           **alter ego of the business enterprise called "Pleasant Care," which operated the Santa**
24             **Cruz facility.**

25        From the Bernabe examination and documentary material submitted to the Court in conjunction

26  with the motion, the Court finds that the "Pleasant Care" facility in Santa Cruz, which is the subject of

27  this action, was operated by officials of Pleasant Care Corporation and that the conduct of the

28                                             4

1  individuals were the conduct of Pleasant Care Corporation.

2      In 1991, Bernabe founded a corporation named Pleasant Care Corporation.[1]  The Court will

3  refer to Pleasant Care Corporation by that name to distinguish it from Pleasant Care, Inc., the

4  suspended corporation.  Bernabe was and is the sole shareholder of Pleasant Care Corporation.  He

5  also serves as its President and Board Chairman.  An individual named Praxedes De Mesa (a.k.a.

6  Sedy De Mesa) is the Executive Vice President of Pleasant Care Corporation.  The business of

7  Pleasant Care Corporation is the operation and management of approximately 34 skilled nursing

8  facilities.  [Examination Tr., p. 7.]  Each nursing facility does business in facilities owned or leased

9  by Pleasant Care Corporation. [Examination Tr., p. 8.]  When asked directly if Pleasant Care

10 Corporation operates a care home in Santa Cruz, Bernabe testified that it does:

11     Q:    Okay.  Does Pleasant Care Corporation manage a facility in Santa Cruz?
       A:    Manage --
12     Q:    Does it operate a care home in Santa Cruz?
       A:    It operated a care home in Santa Cruz.
13
[Tr. Bernabe Examination p. 9]
14
       In addition to using the officers of Pleasant Care Corporation to manage the operation of
15
   skilled nursing facilities, Bernabe has set up affiliated corporations and used their officers to operate
16
   various skilled nursing facilities.  [Examination Tr., p. 8.]
17
       Particularly to this case, in or around May 1991, Bernabe founded Pleasant Care, Inc., the
18
   corporation named in this lawsuit.  The business address of Pleasant Care, Inc. was listed as 111 West
19
   Robinhood Drive, Suite W, Stockton, California.  [Hall Declaration Exhibit B.]
20
       To complete the picture, at some point in time, Bernabe also founded a corporation named
21
   Stockton Edison Healthcare Corporation, which was also in the business of operating skilled nursing
22
   facilities.  The business address of Stockton Edison was also listed as 111 West Robinhood Drive,
23
   Suite W, Stockton, California.  Originally, Stockton Edison was solely owned by Bernabe.  At some
24
   point in time, Bernabe granted 40% interest in the stock of Stockton Edison to Sedy De Mesa and
25

26     [1]At this point, the Court is not certain of the precise date of incorporation.  In his 2004
   examination, Bernabe testified that Pleasant Care Corporation had been in business "approximately
27 about 15 years."  [Transcript of Examination p. 7.]

28                                                 5

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    another person in recognition of their work in operating health care facilities on behalf of Pleasant

2    Care Corporation.

3           Stockton Healthcare Corporation was operated by Sedy De Mesa and did business under the

4    fictitious business name, "Good Samaritan Rehabilitation and Care Center Inc."

5    **C.      Although a corporation named "Pleasant Care Northern California, Inc." had been**
        **founded to operate the Santa Cruz facility, it never commenced business and had no**
6       **capacity to appear in this litigation.**

7           Bernabe testified that Pleasant Care of Northern California, Inc. was never an operating

8    corporation:

9           Q:      Mr. Bernabe, does Pleasant Care of Northern California, Inc., have any bank accounts
                for which the plaintiffs in the lawsuit that I have just mentioned can satisfy the
10               judgment?
        A:      Pleasant Care of Northern California has never been in operation and had no bank
11               account that I know of.

12   [Tr. Bernabe Examination p. 34.]

13   **D.      Sedy De Mesa and Olivia Linayao managed the Santa Cruz business on behalf of**
        **Pleasant Care Corporation.**
14
        Pleasant Care Corporation CEO Bernabe testified that Sedy De Mesa had authority for the
15
     management of the Santa Cruz facility on behalf of that corporation:
16
        Q:      Does Praxedes [Sedy] De Mesa also have authority over the Santa Cruz facility under
17               Pleasant Care Corporation?
        A:      Pleasant Care Corporation – Sedy De Mesa – Praxedes De Mesa is the executive vice
18               president of Pleasant Care in charge of the Northern California operation.
        Q:      Okay.  And that includes –
19      A:      That includes --
        Q:      – authority over the Santa Cruz –
20      A:      Facility?
        Q:      – facility?
21      A:      Yes, sir.

22   [Tr. Bernabe Examination p. 12.]

23          The Plaintiffs received employment offer letters on "Pleasant Care" letterhead from Sedy De

24   Mesa, under her title as Executive Vice-President of Pleasant Care Corporation, unlawfully stating

25   that they were qualified to work in the United States and that Pleasant Care would file appropriate

26   petitions to government agencies on their behalf.  The Plaintiffs were directed to submit requested

27   documents to "Human Resources Director Pleasant Care Corporation" at the Robinhood Drive

28                                                    6

**United States District Court**
For the Northern District of California

1  address in Stockton.  Additional correspondence, for the ostensible purpose of furthering their

2  immigration petitions, was directed by Sedy De Mesa "EVP" (presumably standing for "Executive

3  Vice-President") to "All Petitioned Employees" on the letterhead of Pleasant Care with the logo

4  "PCC."

5       Ms. Zenaida Wood testified that she worked for Pleasant Care Corporation at the Santa Cruz

6  facility.  Wood testified that De Mesa and Olivia Linayao directed employment activities at the Santa

7  Cruz facility:

8    Q:    . . . Now, Ms. Wood, what did your job entail after the new ownership?
  A:    My job is to educate all of the staff on the facility and service them and give them

9          information or have a meeting to, to give a memo about what is the new changes in the
        building, also to hire people when they are applying for a job.

10    Q:    And in your capacity did you hire people?
  A:    I hired people with some instructions from my supervisors.

11    Q:    Okay.  Is it fair to say that Sedy De Mesa is one of your supervisors?
  A:    Yes, she is.

12    Q:    And did she give you any orders at any time?
  A:    She give me orders sometimes regarding problems in the building but she has a

13          personnel that instructs me onto hire people outside from the locality or area or the
        District that we are in. . . .

14    Q:    And what did Ms. Linayao say to you?
  A:    She said I'm sending people to your facility, give them a job, orient them.  And I said,

15          'Where are their paperwork?'  And she said, 'Don't worry, they're with the attorneys.'
        And I said, 'How can I fill out the [forms]?'  And she said, 'Just hold the forms and get

16          them when the paperwork is done.'
  Q:    Was Ms. Linayao one of your supervisors?

17    A:    She was one of my supervisors because she is the recruiting and sponsoring person of
        the corporation.

18    Q:    Can you explain what you mean to the jury when you say in your you say 'sponsoring
        person'?

19    A:    She was designated by her sister [Sedy De Mesa] and the corporation to be the
        sponsoring person of the corporation.

20  [Tr. Trial pp. 137-40.]

21
22  **E.    There is insufficient evidence to conclude that Stockton Edison was the alter ego of Pleasant Care Corporation.**

23      While there is clear evidence that Pleasant Care Corporation and Stockton Edison, d.b.a.

24  Good Samaritan, shared common officers, there is insufficient evidence of shared control or

25  commingling for the Court to find that Stockton Edison was the alter ego of Pleasant Care Corporation.

26  For example, Bernabe has consistently testified under oath that Stockton Healthcare Corporation was

27  operated by Praxedes (Sedy) De Mesa.  Also, Bernabe states that Sedy De Mesa is in charge of

28                                              7

**United States District Court**

For the Northern District of California

1  Northern California operation for Pleasant Care Corporation.  [Decl. In Opposition to Motion to

2  Amend Judgment p. 1.]

3       The Court finds it curious that Emmanuel Bernabe swears that Olivia Linayao was not an

4  employee of Pleasant Care Corporation.  [Decl. In Opposition to Motion to Amend Judgment, p. 2.] If

5  this statement is true, since there is clear evidence that Olivia Linayao was a managing employee of

6  the Santa Cruz facility, this raises the possibility that when Olivia Linayao made fraudulent

7  representations to the Plaintiffs, she was acting in her capacity as a representative of Stockton Edison

8  Healthcare Corporation.  However, without more, the Court is unable to conclude that Stockton

9  Edison is the alter ego of Pleasant Care Corporation.

10  **F.**    **<u>A party who commits a fraud on the court in order to deflect a judgment that would otherwise be against it may be added to the judgment.</u>**

11

12      Federal Rule of Civil Procedure 60(b) empowers the Court to relieve a party from a judgment

13  if obtained by intrinsic fraud.  Thus, a federal court has inherent power to modify a judgment against a

14  defunct corporation with no interest in a business to add the corporation which actually owned and

15  operated the business on proof that the judgment was obtained in the presence of fraud on the court by

16  the actual owner.  <u>In re Levander</u>, 180 F.3d 1114 (9th Cir. 1999).  Unlike fraud between parties which

17  concerns an intentional tort committed against an opponent before a lawsuit if filed, "fraud on the

18  court" concerns actions which defile the judicial process.  The party charged with fraud on the court

19  must have committed conduct during the litigation of such a nature as to have prevented the opposing

20  party from full and fairly presenting its case.

21      Barnabe, the owner of Pleasant Care Corporation, Pleasant Care, Inc., and the Santa Cruz

22  business called Pleasant Care, knew that the confusingly similar names had resulted in a lawsuit being

23  filed against a defunct corporation and that the real owner of the business had not been named.  The

24  lawyer for Pleasant Care, Inc., stated that even he was kept in the dark about the true status of the

25  multiple businesses.  During the trial, he spoke only of "Pleasant Care:"

26            Mr. Geary:    I think everyone will agree that each one of them [meaning the Plaintiffs] was hired for a particular position and they as we

27                          stand here today each one of those Plaintiffs have been paid in full for the work that they performed while they worked at

28                                  8

United States District Court

For the Northern District of California

1    Pleasant Care.

2    [Tr. Trial p. 82.]

3        Mr. Geary:    It is also important for you to understand that each one of these
                        Plaintiffs were in the United States at the time that they were
4                       employed by Pleasant Care.  None of those Plaintiffs had the
                        right under our immigration law to go to work.
5
     [Tr. Trial pp. 86-87.]
6
          The Court declines to use the fact that Stockton Edison Healthcare, Inc. paid all of the
7
     expenses of the litigation as a basis for its conclusions because its fictitious entity, Good Samaritan,
8
     Inc., was a named defendant until just before submission of the case to the jury.
9
          Despite its lack of capacity, attorney Geary filed an answer on behalf of Pleasant Care, Inc.,
10
     and litigated the case on its behalf.  When questioned by the Court about his action, attorney Geary
11
     explained that he was ignorant of the corporation's lack of capacity and that he took his direction from
12
     co-Defendant Stockton Healthcare.
13
     **G.    Plaintiffs are entitled to an award of reasonable attorneys fees.**
14
          Pursuant to California Business and Professions Code § 2246.5(a) Plaintiffs are entitled to
15
     reasonable attorneys' fees.  The Court finds Plaintiffs' requested sum of $127,050 to be reasonable, if
16
     not modest,  under all of the circumstances of this case.  Plaintiffs are entitled to recover their costs of
17
     suit.
18
                              **III.  CONCLUSION**
19
          For the reasons stated in this Order, Judgment should be amended to add Pleasant Care
20
     Corporation as a judgment debtor as an alter ego to the judgment debtor Pleasant Care of Northern
21
     California, Inc., and to prevent a fraud on the Court.
22
          Plaintiffs motion to add Stockton Edison Healthcare Corporation as a judgment debtor is
23
     denied without prejudice to be renewed upon further proof.
24
          Plaintiffs should be awarded reasonable attorneys fees and costs.
25
     Dated:  June 20, 2005                          /s/James Ware
26                                                  JAMES WARE
     01cv20539mta-judg                              United States District Judge
27

28
                                    9

**United States District Court**

For the Northern District of California

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   James F. Geary jgeary@hrdb.com
    Sydney Jay Hall sjhlaw19@aol.com
3   M. Alieu Iscandari aiscandari@aol.com

4   **Dated:  June 20, 2005**                          **Richard W. Wieking, Clerk**

5

6                                                        **By:/s/JWchambers**
                                                              **Ronald L. Davis**
7                                                             **Courtroom Deputy**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28